UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, | No. 22-cr-20200 |
| v. | Offenses: 18 U.S.C. § 1349;<br>                18 U.S.C. §§ 1028A and 2 |
| D-3 Kurt Schroeder, | |
| Defendant. | Maximum Sentence:<br>18 U.S.C. § 1349: 10 years / $250,000<br>fine or twice the gain/loss<br>18 U.S.C. §§ 1028A and 2: 2 years<br>mandatory consecutive / $250,000 |

## THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

The United States submits this Memorandum in Aid of Sentencing pertaining to Kurt Schroeder. The United States respectfully requests that the Court (1) impose a sentence of 38 months' imprisonment; (2) order Schroeder to pay restitution in the amount of $2,086,197.32, jointly and severally with his co-conspirators; (3) order a special assessment of $200; and (4) order a three-year term of supervised release.

### Background

Defendant Schroeder pleaded guilty to participating in a five-year health care fraud scheme from January 2016 through April 2021. Beginning in or around January 2016 and continuing through at least March 2020, Mr. Schroeder admitted to joining

a conspiracy with marketer Ali Saad, Nancy Harris, and Sherif Khalil[1] to submit and cause the submission of false and fraudulent claims to Medicare for urine drug testing ("UDT"). Spectra Clinical Labs was a toxicology laboratory owned by Sherif Khail and headquartered in California. Schroeder was hired by Khalil as a marketer in Florida, and he agreed with Khalil, Saad, and others to be paid a percentage of each Medicare reimbursement obtained by Spectra as a result of UDT ordered by physicians to whom Schroeder marketed. Schroeder was trained to target physicians who ordered a high volume of UDT and a high percentage of comprehensive testing. Schroeder targeted Charlotte Pain Management Center ("CPMC"), a pain treatment clinic owned by Nancy Harris. While at CPMC, Schroeder and Harris created a signature stamp for Physician 1 without Physician 1's knowledge or consent. With Harris's approval, Schroeder used Physician 1's signature stamp to stamp thousands of physician orders for comprehensive urine drug testing, for the purpose of concealing the scheme to defraud Medicare. Specifically, Schroeder used Physician 1's signature stamp on May 16, 2017, to falsify an order for "comprehensive" urine

---

[1] Saad pleaded guilty to conspiracy to commit health care fraud and awaits sentencing. ECF # 269. Nancy Harris was acquitted by the jury. ECF # 290. Sherif Khalil was convicted by the jury on all counts, including the health care fraud conspiracy, ECF # 327; however, the Court granted his motion for judgment of acquittal as to all counts. ECF # 358. On August 8, 2025, the Government filed a notice of appeal of the Court's decision as to Sherif Khalil. ECF # 370. That appeal remains pending.

drug testing for Medicare Beneficiary R.L.   R.L. was a patient of CPMC and Schroeder used the stamp with the authorization of Harris. The falsified order was sent to Spectra to be billed to Medicare by Khalil.   Schroeder continued to use Physician 1's signature stamp to falsify orders for comprehensive UDT after Physician 1 had left CPMC for other employment. The falsified orders were sent to Spectra to be billed to Medicare by Khalil.   Between January 2016 and February 2020, Medicare paid Spectra approximately $2,086,187.32 for UDT orders for which Schroeder was paid a percentage commission by Khalil and others.   During this time, Khalil and others paid Schroeder approximately $590,771 in return for arranging "comprehensive" UDT orders billed by Khalil, by and through Spectra, to Medicare.

## **Procedural History**

On April 12, 2022, an indictment charged Schroeder with one count of conspiracy to defraud the United States and pay and receive health care kickbacks, 18 U.S.C. § 371, one count of conspiracy to commit health care fraud and wire fraud, 18 U.S.C. § 1349, and two counts of aggravated identity theft, 18 U.S.C. §§ 1028A and 2. On January 14, 2025, Mr. Schroeder pleaded guilty to one count of conspiracy to commit health care fraud and one count of aggravated identity theft.  Mr. Schroeder has remained on bond throughout the pendency of this case.

3

## Sentencing Factors

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court is to consider in sentencing the Defendant. Factors pertinent to the instant offense are discussed below, numbered as they are in Section 3553(a).

**(1)  The nature and circumstances of the offense and the history and characteristics of the defendant.**

### (A)  Nature and circumstances of the offense

Mr. Schroeder's crimes were serious.  He used his access to CPMC to forge Physician 1's signature on thousands of UDT requisition forms.  In effect, he substituted his own judgment for Physician 1's medical expertise.  Mr. Schroeder knew that these forged orders were then used by Khalil to bill Medicare for thousands of tests that Physician 1 had not actually ordered.  Mr. Schroeder was paid a percentage of each of these tests by Khalil as an inducement to continue the scheme. In many instances, the services ultimately billed to Medicare were medically unnecessary, not eligible for reimbursement, or not ordered by a doctor in the first place.

### (B)  The history and characteristics of the defendant

Mr. Schroeder was born in Ohio and raised in a loving, supportive household. PSR ¶ 46-47.  Mr. Schroeder graduated with a bachelor's degree from the University of South Florida in 1997.  PSR ¶ 58.  Despite a positive familial background and

4

education, Mr. Schroeder nevertheless agreed to join a conspiracy, forge a physician's signature, and defraud the United States.

**(2)  The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with appropriate education, vocational training, or medical care.**

Health care fraud is a serious problem nationwide, and particularly so in the Eastern District of Michigan. The National Health Care Anti-fraud Association, an organization composed of both public and private health insurers and regulators, conservatively estimates that three percent of all health care spending in the United States is lost due to fraud. By forging Physician 1's signature on thousands of comprehensive UDT orders, and then subsequently sending claims to Medicare for these same tests, that were not medically necessary, not ordered by a doctor, and acquired through kickbacks, (causing Medicare to pay approximately $2,086,197.32), Mr. Schroeder contributed to and worsened that plague.  Medicare is a trust-based system — and when providers (like Spectra) pay kickbacks to marketers (like Schroeder) in exchange for increased volumes of lab orders, and when marketers then stand in the shoes of medical providers to authorize orders which are not medically necessary, it subverts patient choice and degrades that trust.  This is particularly the case where, as here, the marketers were incentivized to circumvent

medical decision-making and obtain the most expensive tests no matter the cost and heedless of medical need.

Mr. Schroeder's punishment should take into account not only the scope and seriousness of his own criminal conduct, but also the need to deter others from engaging in these types of schemes.  The Sixth Circuit Court of Appeals has emphasized that "economic and fraud-based crimes . . . are prime candidates for general deterrence" because these crimes "are more rational, cool, and calculated than sudden crimes of passion or opportunity."  *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (*quoting United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)).

All of the money involved in the charged scheme came from the Medicare program.  That program, funded by American taxpayers, is a public trust intended to provide health insurance for the elderly and disabled.  Every dollar that Mr. Schroeder helped divert from this program—to himself and others—is a dollar that could and should have been used to pay for treatment, medications, and supplies that Medicare beneficiaries actually needed.  Accordingly, the United States respectfully requests that Mr. Schroeder's punishment reflect the need to promote respect for the laws that protect the public and guard against fraud, especially as it relates to healthcare fraud and healthcare kickbacks.

### (3)  The kinds of sentences available

Under 18 U.S.C. § 1349, the maximum sentence is ten years' imprisonment and the maximum fine is $250,000 or twice the gain/loss.  Mr. Schroeder's conviction under 18 U.S.C. § 1028A requires a mandatory two-year sentence consecutive to the sentence imposed as a result of his plea to Count 2.

### (4)  The sentencing range established by the U.S.S.G.

The parties agree regarding the following base offense level and enhancements for Count 2, (ECF No. 270):

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Intended Loss > $1,500,000: | +16 | [U.S.S.G. § 2B1.1(b)(1)(I)] |
| Federal Health Care Offense | +2 | [U.S.S.G. § 2B1.1(b)(7)] |
| Zero-Point Offender | -2 | [U.S.S.G. § 4C1.1] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1] |

This calculation results in a Guidelines range of 30-37 months' imprisonment for Count 2.  There are no Guidelines for Count 3, as the law requires a mandatory term of 2 years' imprisonment consecutive to the sentence imposed for Count 2.

The Government requests a total sentence of 38 months' imprisonment.

**(5)    Any pertinent policy statement issued by the United States Sentencing Commission ("U.S.S.C.")**

The United States is unaware of any pertinent policy statements issued by the U.S.S.C. However, the Patient Protection and Affordable Care Act ("PPACA"), enacted in March 2010, provides the most recent evidence of congressional intent in this area of the law. PPACA specifically provides for increased sentences for health care fraud offenses, and further requires the U.S.S.C. to "ensure that the Federal Sentencing Guidelines and policy statements - (i) reflect the serious harms associated with health care fraud and the need for aggressive and appropriate law enforcement action to prevent such fraud; and (ii) provide increased penalties for persons convicted of health care fraud offenses in appropriate circumstances." Pub. L. No. 111-148, § 10606(a)(3).

**(6)    The need to avoid unwarranted sentencing disparities among defendants with similar records**

This sentencing factor is intended to address national sentencing disparities, and it is widely recognized that a Guidelines sentence is the best way to avoid such disparities. *See United States v. Smith*, 564 F. App'x 200, 205 (6th Cir. 2014) (stating that "one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national

sentencing practices"); *Rita v. United States*, 551 U.S. 338 (2007). Mr. Schroeder's Guidelines range takes into account the specific characteristics of his offense and imposing a Guidelines sentence is the best way to avoid unwarranted sentencing disparities with similarly-situated defendants nationwide.  While national disparity is the primary concern animating this sentencing factor, the Court also has discretion to consider the potential for disparity between co-defendants, though none have yet been sentenced in this case. *See United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010).

## <u>Conclusion</u>

Based upon the considerations set forth above, the United States recommends that the Court (1) impose a sentence of 38 months' imprisonment; (2) order Schroeder to pay restitution in the amount of $2,086,197.32, jointly and severally with his co-conspirators; (3) order a special assessment of $200; and (4) order a three-year term of supervised release.

Respectfully submitted,

JEROME F. GORGON JR
United States Attorney

LORINDA LARYEA
Acting Chief
U.S. Department of Justice
Criminal Division, Fraud Section


/s/Jeffrey A. Crapko
JEFFREY A. CRAPKO
U.S. Dept. of Justice Trial Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3211
(202) 924-5368
Jeffrey.Crapko@usdoj.gov

Date:  October 9, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel for Defendant.

Date: October 9, 2025

/s/Jeffrey A. Crapko
JEFFREY A. CRAPKO
U.S. Dept. of Justice Trial Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3211
(202) 924-5368
Jeffrey.Crapko@usdoj.gov